Elayna J. Youchah, Bar #5837
youchahe@jacksonlewis.com
Joshua A. Sliker, Bar #12493
joshua.sliker@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Pkwy, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

Kirsten A. Milton (*admitted pro hac vice*)
kirsten.milton@jacksonlewis.com
**JACKSON LEWIS P.C.**
150 North Michigan Avenue, Suite 2500
Chicago, IL  60601
Tel: (312) 787-4949
Fax: (312) 787-4995

*Attorneys for Defendants*
*Fertitta Entertainment, Inc.,*
*Fertitta Entertainment Holdings, LLC,*
*Fertitta Hospitality, LLC, Landry's Inc.,*
*Golden Nugget Inc. dba Golden Nugget Las Vegas*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SALLIE SHANNON CHAPMAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>FERTITTA ENTERTAINMENT, INC., FERTITTA ENTERTAINMENT HOLDINGS, LLC, FERTITTA HOSPITALITY, LLC, LANDRY'S INC., GOLDEN NUGGET INC. dba GOLDEN NUGGET LAS VEGAS,<br><br>                    Defendants. | Case No. 2:15-cv-01944-JAD-GWF<br><br><br>**DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br>**AS TO PLAINTIFF'S FIRST AND SECOND**<br>**CAUSES OF ACTION** |

Defendants FERTITTA ENTERTAINMENT, INC., FERTITTA ENTERTAINMENT

HOLDINGS, LLC, FERTITTA HOSPITALITY, LLC, LANDRY'S INC., and GNLV, CORP.

(D/B/A GOLDEN NUGGET LAS VEGAS HOTEL AND CASINO) (incorrectly identified as

GOLDEN NUGGET INC. DBA GOLDEN NUGGET LAS VEGAS) (collectively "Defendants"), by and through their counsel, Jackson Lewis P.C., hereby move for summary judgment in their favor and against Plaintiff Sallie Shannon Chapman's ("Chapman" or "Plaintiff").[1]  In her Complaint, Plaintiff asserts two causes of action:[2] failure to pay overtime pursuant to the Fair Labor Standard Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and unjust enrichment.  Summary judgment is appropriate as to both claims because (1) the Ninth Circuit has made clear that, casino hosts with discretion and authority similar to that exercised by Plaintiff as a Casino Marketing Executive, fall within the administrative exemption to the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), *Dannenbring v. Wynn Las Vegas, LLC*, No. 2:12-CV-00007 JCM (VCF), 2014 U.S. Dist. LEXIS 15587 (D. Nev. Feb. 7, 2014), *aff'd* 646 Fed. Appx. 556 (9th Cir. 2016); (2) Golden Nugget's Casino Marketing Executives undisputedly are primarily responsible for exercising discretion and independent judgment in promoting Golden Nugget's gambling business – a marketing activity and thus, a general business operation; and (3) Plaintiff's unjust enrichment claim must be dismissed because the Ninth Circuit has specifically said that claims for unpaid overtime are directly covered by the FLSA.  *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000).  For each and all of these reasons, discussed more fully below, Defendants ask that summary judgment be granted in their favor on both of Chapman's claims.

/ / /

/ / /

/ / /

/ / /

---

[1]     The parties agreed that discovery in this matter would initially proceed only as to Plaintiff's claims, and not the putative class as a whole.  Stipulated Discovery Plan and Scheduling Order, p. 1, ECF No. 25.

[2]     Plaintiff originally asserted a third cause of action for conversion, but, on February 22, 2016, the Court dismissed that claim without leave to amend.  ECF No. 22.

This Motion is based upon Fed. R. Civ. P. 56, the following Memorandum of Points and Authorities, the exhibits attached hereto (including authentication declarations) and such other argument of counsel as the Court may wish to consider.

DATED this 9th day of November, 2016.

JACKSON LEWIS P.C.

_____/s/ Kirsten A. Milton_____
Elayna J. Youchah, Bar #5837
Joshua A. Sliker, Bar #12493
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

Kirsten A. Milton (admitted *pro hac vice*)
150 North Michigan Avenue, Suite 2500
Chicago, IL  60601

*Attorneys for Defendants*
*Fertitta Entertainment, Inc.,*
*Fertitta Entertainment Holdings, LLC,*
*Fertitta Hospitality, LLC,*
*Landry's Inc., Golden Nugget Inc. dba*
*Golden Nugget Las Vegas*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.     STATEMENT OF UNDISPUTED FACTS**

The following facts are undisputed in this case:

**A.     The Parties.**

1.     GNLV, Corp. (d/b/a Golden Nugget Las Vegas Hotel and Casino) (the "Golden Nugget") is a luxury hotel and casino located on Fremont Street in downtown Las Vegas, Nevada. Declaration of Mike Leonard ¶ 3, Exhibit 1.

2.     In 1991, Plaintiff began working as a casino host for the Golden Nugget. Deposition of Shannon Sallie Chapman, 8:11-9:3, Exhibit 9.

3.     On January 5, 2009, Plaintiff became a Golden Nugget Casino Marketing Executive, a position she held until the end of her employment.  Personnel Action Notice ("PAN")

dated January 5, 2009 [bates GNLV-0031], Exhibit 2.  This position is within the "marketing umbrella."  Deposition of Shannon Sallie Chapman, 9:17-20, Exhibit 9.

4.     Plaintiff was never employed by Fertitta Entertainment, Inc.; Fertitta Entertainment Holdings, LLC; Fertitta Hospitality, LLC, or Landry's Inc.  Declaration of Mike Leonard ¶ 5, Exhibit 1.

**B.     As A Casino Marketing Executive, Plaintiff Was Responsible For Determining The Best Way To Develop Her Own Guest Base.**

5.     In 2011, Plaintiff's salary was $55,000, in 2012, it was $56,100, and in 2013 and 2014 it was $57,222.  Exhibits 2, 5, and 6.  Plaintiff's salary was always made more than $455 per week and above $23,660 annually.   Deposition of Sallie Shannon Chapman, 83:24-84:2-10, Exhibit 9.

6.     In addition to her base salary, Plaintiff was also eligible for quarterly bonuses and an annual bonus if she met certain performance goals.  *Id.* at 84:11-87:23; 2013 Casino/Slot Host Quarterly Bonuses, Exhibit 7. [GNLV-0413-14].

7.     At all times during her employment as a Casino Marketing Executive, Plaintiff understood that the salary she was paid was to compensate her for all of the time she spent working for the Golden Nugget.  Deposition of Sallie Shannon Chapman, 118:5-9, Exhibit 9.

8.     As a Casino Marketing Executive, Plaintiff was responsible for cultivating relationships with the Golden Nugget's slot and table games customers with the purpose of getting customers to return and spend money.  *See* Deposition of Shannon Sallie Chapman, 10:12-15; 37:23-25, Exhibit 2; *see also* Casino Marketing Executive Job Description, [bates GNLV-0412], Exhibit 3.

9.     To cultivate these relationships, Plaintiff testified she:

a)     frequently spoke with customers on the telephone to get to know them and their families on a personal level and to learn their likes and dislikes, Deposition of Sallie Shannon Chapman, 9:21-10:2-24, 25:11-:4 Exhibit 9;

b)     advised customers of upcoming events at the Golden Nugget, *Id.* at 10:16-24; 47:3-48:21;

c)     assisted customers in making travel arrangements including hotel reservations, *Id.* at 10:16-24;

d)     sent birthday cards, *Id.*; and

e)     greeted and interacted with customers while they were visiting the Golden Nugget, *Id.* at 11:7-19.

10.     One of Plaintiff's primary goals was to get customers to return to the casino and spend money. *Id.* at 12:17-19.

11.     To develop her own client list, Plaintiff also encouraged customers of Golden Nugget to refer their friends and family members to her. *Id.* at 45:25-46:23, 92:3-93:4.

12.     Plaintiff maintained relationships with employees of other casinos to generate business through referrals of customers to the Golden Nugget. *Id.* at 91:23-92:2.

13.     As a Casino Marketing Executive, Plaintiff had "comp authority" which meant that she had the ability to offer complimentary items to customers. Declaration of Mike Leonard, ¶ 6.

14.     Plaintiff did not need approval to issue comps for Golden Nugget's restaurants, which included a coffee shop/café, buffet, sushi bar, and steakhouse. Deposition of Sallie Shannon Chapman, 13:8-14:1, 11-13, Exhibit 9.

15.     In evaluating whether to use her discretion to offer a restaurant comp, Plaintiff analyzed the dollar value of the customer's wins and losses while considering what type of

restaurant would incentivize the guest to continue returning to Golden Nugget versus what would be financially best for the casino. *Id.* at 12:25-13:7-16; 14:23-15:11.

16.     Plaintiff followed a similar evaluation process when deciding whether to use her discretion and issue hotel room comps. *Id.* at 16:20-17:4. For example, if a guest lost $1,000 a day in the casino, Plaintiff would "definitely" comp their room. *Id.*

17.     In determining whether to issue comps, Plaintiff also consulted computer-based theoretical models (known at the Golden Nugget as "theos") which analyzed data obtained from a customer's player's card including average daily value of casino play, wins, losses and other metrics. *Id.* at 18:13-20; 19:22-20:20.

18.     Plaintiff could issue comps at her discretion, as long as they were within Golden Nugget's Casino and Slot Marketing Parameters (the "guidelines"). *Id.* at 107:13-16; Golden Nugget Las Vegas Casino and Slot Marketing Parameters, Exhibit 4.

19.     Plaintiff also had the authority to issue customers a casino line of credit up to $5,000 at her discretion. *Id.* at 76:19-77:5; 80:10-17.

**C.     Plaintiff Was Responsible For Determining How Best To Use Her Days To Develop Her Customer Base.**

20.     From 2012 to 2014, Plaintiff worked from 7:00 a.m. to 3:00 p.m. *Id.* at 24:18-22.

21.     On most days, Plaintiff started the day working in the Golden Nugget's host office. *Id.* at 25:12-20.

22.     From 7:00 a.m. to 9:00 a.m., Plaintiff was the only Casino Marketing Executive on-site at the Golden Nugget and the sole decision-maker as to whether customers received comps, and, many times, a line of customers was waiting at the host office to checkout at the start of her day. *Id.* at 25:24-26:24; 35:4-9

23.     As part of the checkout process, Plaintiff performed player evaluations—which included an analysis of the customer's win/loss record and "theos" as well Golden Nugget's comp

guidelines—to determine whether the customer could receive any comps. *Id.* at 28:3-11; *see generally* Golden Nugget Las Vegas Casino and Slot Marketing Parameters, Exhibit 4.

24.      In addition, Plaintiff addressed complaints from customers, such as problems with bedbugs, uncomfortable beds, cold eggs in a restaurant, or loitering homeless people, and worked to resolve them on her own. Deposition of Sallie Shannon Chapman, 102:25-107:16, Exhibit 9.

25.      Plaintiff spent approximately three to four hours per day in the host office assisting customers. *Id.* at 36:14-37:13.

26.      It was up to Plaintiff's discretion to decide how to spend the remainder of her shift. *Id.* at 43:1-4.

27.      Plaintiff testified that she often spent the remainder of her shift making calls to past customers, greeting customers arriving in limousines, responding to customer assistance requests (e.g., dinner reservations), and walking the casino floor to identify potential new customers. *Id.* at 37:1-22; 43:5-20; 59:20-60:3.

28.      Based on her experience, Plaintiff developed her own method for identifying and approaching new guests. She usually approached the customer and asked if he/she had a Player's Card. If the person did not, she usually requested the person's driver's license, which she used to enter the relevant information into the Golden Nugget's database. *Id.* at 43:5-45:24.

29.      Plaintiff adjusted her approach based on her interactions with the new guest and his/her responses. *Id.* at 44:25-45:4.

30.      Plaintiff maintained a separate list of customers that she signed up for Golden Nugget's Player's Card in order to follow up with them in the future. *Id.* at 46:13-23.

31.      During the last three years of her employment with the Golden Nugget, Plaintiff was issued a Blackberry cellular telephone to use for work-related purposes including communicating with customers. *Id.* at 63:5-15.

32.     Plaintiff received telephone calls from her customers virtually every day.  *Id.* at 63:16-64:1.

33.     Plaintiff also received emails from her customers.  *Id.* at 69:8-11.

34.     Plaintiff answered and/or returned customer calls outside of her normal work hours because she knew that doing so may get more customers into the casino.  *Id.* at 65:7-12; 69:4-7.

35.     Plaintiff also recommended special events to the Golden Nugget's upper management based on what she believed would draw in customers.  *Id.* 49:9-14; 55:16-23.

36.     Plaintiff also planned and executed special events to incentivize customers to return to the Golden Nugget.  *Id.* at 48:11-21.

37.     For example, Plaintiff planned and executed an event surrounding the concert of country music artist Faith Hill.  *Id.* at 49:15-24.  Plaintiff and another casino host planned a dinner party, curated the menu, and determined which customers to invite by analyzing the value of their casino play, frequency of visits and loyalty to the Golden Nugget, and general interest in country music.  *Id.* at 51:2-6; 52:15-23; 53:13-54:4.

38.     Plaintiff also served as a mentor to other casino hosts wherein she would answer questions about the job and offer advice on dealing with customers.  *Id.* at 74:3-75:5.

## II.     LEGAL ARGUMENT

### A.     Defendants Are Entitled To Summary Judgment.

Whether an employee's job qualifies as exempt from federal wage laws is a question of law to be resolved by the court.  *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Harper v. Gov't Emps. Ins. Co.*, 754 F.Supp.2d 461, 463 (E.D.N.Y. 2010) (whether an employee is exempt is a question of law for the court and "depends less on [her] title, and more on the actual duties performed"); *see Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir. 1996) (noting that determination of whether particular activities trigger an exemption is a question of

law).    Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, "show there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (holding that summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists).  While the facts and all reasonable inferences drawn from the facts are to be viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), it is the plaintiff who bears the burden of going outside the pleadings and presenting admissible evidence demonstrating that facts exist that raise genuine issues of fact that should be reserved for trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).   Thus, to satisfy this burden, the plaintiff must show more than "some metaphysical doubt as to the material facts," and "neither speculation nor generic challenges to a witness's credibility are sufficient to satisfy this burden." *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) (citation omitted); Fed. R. Civ. P. 56(e).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248.  "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputes over irrelevant or unnecessary facts should not be considered.  *Id.*  Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.      Plaintiff Was An Exempt Employee Of Golden Nugget And Not Any Of The Other Defendants.**

There is no dispute that Plaintiff was at all times a Golden Nugget employee and was never employed by Fertitta Entertainment, Inc.; Fertitta Entertainment Holdings, LLC; Fertitta Hospitality, LLC, or Landry's Inc.  Declaration of Mike Leonard ¶ 5, Exhibit 1.  Plaintiff has put forth no evidence to the contrary—because there is none.  Therefore, entry of summary judgment on behalf of Fertitta Entertainment, Inc.; Fertitta Entertainment Holdings, LLC; Fertitta Hospitality, LLC, and Landry's Inc. is warranted on this basis alone.  *Wells Fargo Bank, N.A. v. ANC Vista I, LLC*, No. 2:14-CV-840 JCM (NJK), 2016 U.S. Dist. LEXIS 32439, at *17 (D. Nev. Mar. 14, 2016) (citing *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, 461, 168 P.3d 1055 (2007) (affirming summary judgment granted on a "question of fact" where the plaintiff cannot recover as a matter of law because there was no evidence in the record supporting the alleged fact)).

**C.      Plaintiff Is Exempt Under The Administrative Exemption.**

There is no dispute that, as a Casino Marketing Executive, Plaintiff was exempt from the FLSA's overtime requirements because she was employed in a "bona fide administrative capacity." 29 U.S.C. § 213(a)(1); *In re Farmers Ins. Exchange, Claims Reps. Overtime Pay Litig.*, 481 F.3d 1119, 1127 (9th Cir. 2006).  To qualify for the exemption, an employee must meet three requirements, such that:

> (1)  [She is] [c]ompensated on a salary or fee basis at a rate of not less than $455 per week[3] . . .
>
> (2)  [Her] [] primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

---

[3]      Generally, "an employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).

(3)   [Her] [] primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541 *et seq*.  In fact, in *Dannenbring v. Wynn Las Vegas, LLC*, No. 2:12-CV-00007 JCM (VCF), 2014 U.S. Dist. LEXIS 15587 (D. Nev. Feb. 7, 2014), *aff'd* 646 Fed. Appx. 556 (9th Cir. 2016)), the Ninth Circuit expressly found that Wynn's executive slot marketing host, a role nearly identical to the Golden Nugget's Casino Marketing Executives, was properly classified as exempt administrative employees under the FLSA. *Id*. at *15-16 (like Plaintiff, the Wynn's executive slot marketing host "was responsible for implementing marketing initiatives and cultivating relationships with gaming customers, especially those with preferences for playing slot machines, extending benefits and services to guests based on their spending activity, issuing credit to gaming customers, reviewing and reactivating existing credit lines, and mentoring slot hosts to help them develop their knowledge and customer relations skills").  Accordingly, the Court's analysis need not go further because, as discussed more fully below, there is no dispute that Plaintiff met each of the requirements under the FLSA regulations.

### 1.   *Plaintiff admits that her pay met the salary basis and salary level requirements.*

To be paid on a salary basis, an employee must receive a predetermined amount that is not subject to reduction based on the quality or quantity of work.  *See* 29 CFR § 541.602.  And to satisfy the salary-level requirement, employees must receive at least $455 per week ($23,660) annually during the relevant period.[4]  These requirements are not disputed.  Deposition of Sallie Shannon Chapman, 83:21-84:1.  Golden Nugget paid Plaintiff on a salary basis, and in the three years prior to her termination, Plaintiff was never paid an annual salary less than $55,000, well

---

[4]      The statute of limitations for an FLSA violation is generally two years, but is extended to three years if the violation is willful.  29 U.S.C. § 255(a).  Willfulness can be shown with evidence that an "employer either knew or showed reckless disregard" as to whether the FLSA prohibited its conduct. *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007) (*quoting McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988)).

above the required salary level.[5]  Exhibits 2, 5, and 6.  At the time of her termination, Plaintiff's annual salary was $57,222.[6]  Exhibit 6.  Thus, there is no dispute that Plaintiff's pay satisfied the salary basis and salary level requirements.

###### 2. Plaintiff's primary duty relates to the management or general business operations of Defendant.

"Work relates to 'management or general business operations' when work relates "to assisting with the running or servicing of the business, as distinguished . . . from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id.*  The regulations specifically include "marketing . . . promoting sales . . . . [and] public relations" in this definition.  29 C.F.R. § 541.201(b).  In *Dannenbring*, the Ninth Circuit held that the former-slot marketing executive host's duties (the exact duties Plaintiff had)—i.e., to "promot[] the Wynn's gambling business with customers by cultivating relationship individual gamblers"—"directly relate to the management or general business operations of the employer."  *Dannenbring*, 2016 U.S. Dist. Lexis 5715 at *4 (citing 29 C.F.R. § 541.201(b)); *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512, 517 (6th Cir. 2004) (quoting 29 C.F.R. § 541.205(b) (2003) (administrative work could also include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.").

Here, Plaintiff's title says it all – she was a Casino *Marketing* Executive.  Plaintiff testified that her position fell under the Golden Nugget's "marketing umbrella."  Deposition of Sallie Shannon Chapman, 4:4-9, Exhibit 9.  The Golden Nugget is a luxury hotel and casino located on Fremont Street in downtown Las Vegas, Nevada.  Decl. of Mike Leonard ¶ 3.  Plaintiff testified that, as a Casino Marketing Executive, her primary duty was marketing the products and services offered by the Golden Nugget (e.g., gambling) by cultivating guest relationships with the goal of

---

[5]     In 2011, Plaintiff's salary was $55,000, in 2012, it was $56,100, and in 2013 and 2014 it was $57,222. Exhibits 2, 5, and 6.

[6]     Indeed, Plaintiff's salary is even greater than the adjusted salary level ($47,476) that will become effective December 1, 2016 pursuant to a new Department of Labor regulation.

driving revenue growth by convincing guests to return to the casino and spend money.  Deposition of Sallie Shannon Chapman, 10:12-15, Exhibit 9; *see also* Exhibit 3.  To accomplish this goal, Plaintiff tried to get to know her customers' (and their family and friends') gaming and personal preferences.  Deposition of Sallie Shannon Chapman, 49:9-14.  She used this information to determine which clients to invite to future casino events based on their gaming preferences, as well as to determine the types of comps to offer them to make the Golden Nugget "more appealing and accessible" to "persuad[e] customers to spend money on defendant's 'products'."  *Id.*; *Dannebring*, 2014 U.S. Dist. LEXIS 15587 at * 21-22.  She also recommended and planned events to draw her customers to the Golden Nugget.  Deposition of Sallie Shannon Chapman, 9:21-12:19; 47:3-48:21; 49:9-14; *Dannebring*, 2014 U.S. Dist. LEXIS 15587 at * 21-22 (finding that plaintiff's role in promoting casino activities, extending lines of credit, and distributing complimentaries all constituted marketing because it induced customers to spend more money on Wynn's "products"); *see also Baum v. Astrazeneca LP*, 372 Fed. Appx. 246, 284 (3d Cir. 2010) (analyzing "bona fide administrative capacity" under a state statute based on federal law and holding that "the second requirement, performance of nonmanual work directly related to AstraZeneca's general operation was satisfied by Baum's marketing and advertising of AstraZeneca's products."); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 12 (1st Cir. 1997) (applying FLSA administrative employee exemption to insurance marketing representatives); *see also Reich v. Avoca Motel Corp.*, 82 F.3d 238, 240 n.5 (8th Cir. 1996) (stating that "engaging in 'public relations' work to gain repeat customers" was an administrative task under the FLSA).

Here, as in *Dannenbring*, there is no doubt that Plaintiff's work as a Casino Marketing Executive related to "the management or general business operations" of the Golden Nugget and therefore was administrative exempt work.

### 3.   *Plaintiff's primary duty requires discretion and independent judgment in matters of significance.*

There is no dispute that, as a Casino Marketing Executive, Plaintiff exercised discretion and independent judgment in her marketing activities sufficient to satisfy the administrative exemption because her decisions directly impacted the Golden Nugget's business to a "substantial degree." 29 C.F.R. § 541.202(b).  The DOL regulations make clear that the exercise of discretion and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

In making this determination, the regulations suggest a number of factors to consider, including:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices . . . whether the employee performs work that affects business operations to a substantial degree; . . . whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; . . . and whether the employee represents the company in handling complaints . . . .

29 C.F.R. § 541.202(b).

Here, Plaintiff was given a significant level of discretion and authority as a Casino Marketing Executive to run her guest business as she saw fit.  Like the Wynn's executive slot marketing host's client relationships, Plaintiff's guests relationships "were largely self-managed and she was held accountable [through incentives and bonuses] based on her marketing efforts." *Dannebring*, 2016 U.S. Dist. LEXIS 5715 at *4; Deposition of Sallie Shannon Chapman, 84:11-87:23.  It is undisputed that Plaintiff's job daily involved comparing and evaluating "possible courses of conduct" and "making a decision after" considering "the various possibilities," 29 C.F.R. § 541.202(a), in order to decide the most effective method for "handling [guest] complaints."

For example, on most days, Plaintiff's day started in the host office, where, from 7:00 a.m. to 9:00 a.m., she was often the only Casino Marketing Executive on duty.  During this time, she responded to customer complaints about issues such as bedbugs, uncomfortable beds, cold eggs, and homeless people.  Deposition of Sallie Shannon Chapman, at 103:16-104:19.  As the sole guest-facing representative of the Golden Nugget at that time, Plaintiff had to resolve the complaints, often having to decide on the spot whether or not to issue the guest any sort of comp. to foster goodwill and/or cure a negative experience.  *Id.* at 25:24-26:19; 35:4-9; 104:20-107:16. In this role, Plaintiff was driving whether or not the guests had a positive experience at the Golden Nugget and would return in the future and spend money.

Plaintiff had discretion to issue comps for her own guests.  For instance, she could decide whether to comp hotel rooms, restaurants, and other items without consulting with, or seeking approval from, her managers.  Deposition of Sallie Shannon Chapman, 12:25-13:7-16; 14:23-15:11; 107:13-16, Exhibit 9; *see also* Exhibit 6; *see, e.g.*, *Allen v. Harrah's Entm't, Inc.*, No. 2:04-cv-128, 2006 U.S. Dist. LEXIS 88102, *33-34 (N.D. Ind., Dec. 4, 2006) (recognizing that issuing "comps" to casino customers is administrative in nature).  In making these decisions, Plaintiff analyzed a variety of factors, including the average daily value of the customer's casino play, their wins and losses, theoretical computer models based on the customer's Player's Card data, frequency of visits, loyalty, and the financial impact the comp would have on the casino. Deposition of Sallie Shannon Chapman, 12:25-13:7-16; 14:23-15:11; 18:13-20; 19:22-20:20; 28:3-11; 51:2-12.  With respect to restaurant comps, in particularly, she testified that she analyzed the dollar value of the customer's wins and losses while considering what type of restaurant would incentivize the guest to continue returning to the Golden Nugget versus what would be financially best for the casino.  *Id.* at 12:25-13:7-16; 14:23-15:11; 18:13-20; 19:22-20:20; 28:3-11; 51:2-12. Thus, there can be no doubt that Plaintiff's work in this regard affected Golden Nugget's "business

operations to a substantial degree" because it was a primary driver of the Golden Nugget's repeat business.[7]  29 C.F.R. § 541.202(b).

Plaintiff also had the authority and discretion to commit the Golden Nugget "in matters that have significant financial impact" by issuing lines of credit to customers up to $5,000, something she testified she could do without getting prior approval.  Deposition of Sallie Shannon Chapman, 80:10-21, Exhibit 9; 29 C.F.R. § 541.202(b).  The issuance of credit in a casino is analogous to the issuance of an interest-free loan.  Leonard Dec. ¶ 7.  The customer is given a specified amount of money in the form of a loan, which he or she may use to gamble with.  *Id.*  If the customer does not pay back the loan, the company suffers a loss in the form of the loan amount, and also incurs fees and costs for collection attempts.  *Id.*  Given that Plaintiff had relationships with at least 100 individuals (and, in some cases, their families too), Plaintiff had the ability to expose the Golden Nugget to tens of thousands of dollars in losses if her customers did not pay back the credit issued to them.  *Id.* at 7-8.

Moreover, Plaintiff had the discretion to decide the manner in which her marketing activities were carried out, and was largely unsupervised during the majority of her work days. Plaintiff testified that after she finished working in the host office, the remainder of her shift was for her to do with it as she saw fit.  *Id.* at 43:1-4.  Typically, she used this time to walk the casino floor to identity potential new customers, reach out to past customers, respond to guest assistance requests (e.g., making dinner suggestions and reservations), and greet guest limousines as they

---

[7]     Although Plaintiff testified that if she wanted to comp something outside of the guidelines, it was her practice to consult with her managers "just to be on the safe side," *Id.* at 75:6-76:16; 89:14-20; 90:9-15; 97:21-98:1-4.  Plaintiff could not identify a single instance when her decision regarding a comp had been overridden.  *Id.* at 99:13-17 (emphasis added).  Nonetheless, as the regulations make clear, the fact that a decision is subject to review or countermand does not nullify the administrative exemption under the FLSA.  29 C.F.R. § 541.202(c) ("[T]he term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. . . . The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment."); *see Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) ("the exercise of discretion, however, even where circumscribed by prior instruction, is as critical to that success as adherence to "the book." [The Company] of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but judgments must still be made.").

arrived. *Id.* at 37:1-22; 43:5-20; 59:20-60:3. Based on her experience, Plaintiff developed her own strategy for identifying and approaching new guests and adjusted these strategies based on her interaction with the guests. *Id.* at 43:5-45:24. If the guest was a new player, and someone Plaintiff, deemed in her own judgment, could be a returning player, Plaintiff registered the individual with a Player's Card and started to develop a relationship with that customer with the goal of developing that customer into a repeat Golden Nugget guest. *Id.* at 43:5-45:24; *Id.* at 46:13-23.

In sum, the undisputed facts demonstrate that Plaintiff's Casino Marketing Executive duties clearly involved discretion and independent judgment regarding matters of significance involving the general business operations of the Golden Nugget. 29 C.F.R. § 541.202(b). It is undisputed that Plaintiff was the main, if not, only, contact between the Golden Nugget and her clients. As such, the representation of the Golden Nugget through Plaintiff was of utmost importance in maintaining a positive relationship between the Golden Nugget and guests. Plaintiff was responsible for ensuring her clients continued to return to the Golden Nugget to gamble and spend money at the hotel and casino, responsibilities which unquestionably had a substantial impact on the Golden Nugget's business operations. *Dannebring*, 2016 U.S. Dist. LEXIS 5715 at *4 (upholding the district court's decision finding casino hosts as exempt administrative employees); *see, e.g.*, *Allen v. Harrah's Entm't, Inc.*, No. 2:04-cv-128, 2006 U.S. Dist. LEXIS 88102, *33-34 (N.D. Ind., Dec. 4, 2006) (recognizing that issuing "comps" to casino customers is administrative in nature); *Hines v. State Room, Inc.*, 665 F.3d 235, 245-47 (1st Cir. 2011) (holding that individuals selling banquet events, who worked with discretion in helping customers select various options, exercised independent judgment and discretion regarding matters of significance to the employer and were properly classified as exempt pursuant to the FLSA); *Swartz v. Windstream Commn's, Inc.*, No. 10-3313, 429 F. App'x 102, at *2-3 (3rd Cir. 2011) (unpublished decision) (holding that employee who designed telecommunications systems for individual

customers exercised discretion and independent judgment and was properly classified within the administrative exemption of the FLSA); *Talbert v. Am. Risk Ins. Co., Inc.*, 405 F. App'x 848, 854-55 (5th Cir. 2010) (unpublished decision) (claims adjuster who made recommendations regarding resolution of insurance coverage exercised discretion and independent judgment and was subject to the administrative exemption). Thus, there is simply no dispute that Plaintiff was an exempt administrative employee under the FLSA and Defendants' Motion for Summary Judgment should be granted.

**B.      Plaintiff's Unjust Enrichment Claim Also Fails Because It Is Duplicative Of Plaintiff's Claims For Unpaid Overtime Under The FLSA.**

Plaintiff's unjust enrichment claim fares no better. As a threshold matter, if the Court determines that Plaintiff was exempt under the FLSA, then Plaintiff's unjust enrichment claim is moot because, under the FLSA, exempt employees are not entitled to overtime and therefore, there is no benefit the Golden Nugget could have retained.[8] *Dannebring*, 2014 U.S. Dist. LEXIS 15587 at *17 ("[T]he overtime provision of the FLSA does not apply to 'any employee employed in a bona fide . . . administrative . . . capacity . . . .) (citing 29 U.S.C. § 213(a)(1)).

Even if Plaintiff is not exempt, Defendants are still entitled to summary judgment on Plaintiff's unjust enrichment claim because it merely parrots Plaintiff's FLSA claim for unpaid overtime: "[I]n *failing to pay overtime wages* due and owing to Plaintiff, [Defendants] have unjustly retained money or property belonging to Plaintiff contrary to the fundamental principles of justice or equity and good conscience." Cmpl. ¶ 31, ECF No. 1 (emphasis added). Under conflict preemption, "where state law stands as an obstacle to the accomplishment and execution

---

[8]      "[U]njust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004) (en banc), *as corrected on denial of reh'g* (Apr. 13, 2005). In Nevada, the elements of an unjust enrichment claim are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *See, e.g.*, *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 942 P.2d 182, 187 (Nev. 1997); *Saterbak v. MTC Fin. Inc.*, Case No. 3:10-cv-0501-RCJ-VPC, 2011 U.S. Dist. LEXIS 11872, at *16-17 (D. Nev. Feb. 4, 2011).

of the full purposes and objectives of Congress," it is preempted.  *Industrial Truck Ass'n, Inc. v. Henry*, 125 F.3d 1305, 1309 (9th Cir. 1997).  The Ninth Circuit has made clear that "state laws stand[] as an obstacle," where, as here, they "are directly covered by the FLSA (such as overtime and retaliation disputes)."  In those instances, such claims "must be brought under the FLSA."[9] *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000); *Helm v. Alderwoods Group, Inc.*, 696 F.Supp.2d 1057, 1075-76 (N.D. Cal. 2009) (finding that "plaintiffs' claims for unpaid overtime are directly covered by the FLSA. . . . [And, although] [] the FLSA's savings clause allows states and municipalities to enact wage and hour legislation that is more favorable to workers than the FLSA, the federal statute preempts common law claims that seek remedies for rights protected by the FLSA (such as minimum wage and overtime pay); *accord Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-95 (4th Cir. 2007) (collecting district court cases "deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims.").

Here, Plaintiff's entire suit rests on her contention that she was not paid for overtime during her employment with the Golden Nugget.  Cmpl. ¶¶ 20, 25-29, 31-34, ECF No. 1.  She has not alleged in her Complaint, nor otherwise contended during the pendency of this case, that there is any other basis upon which her suit is founded.  Thus, because her unjust enrichment claim is entirely premised on alleged unpaid overtime, her claim is nothing more than a dressed-up claim for unpaid overtime under the FLSA and should be dismissed.  *Williamson*, 208 F.3d at 1154

---

[9]      Such a conclusion is consistent with analogous Nevada law.  It is well-settled in Nevada that when the state has enacted laws providing a full and more adequate set of remedies in favor of a class of persons such as employees, a plaintiff who is member of that class of persons, and seeks to represents a similarly situated class, cannot circumvent the law by asserting claims in tort or equity based on the same factual predicate. *Jacobs v. Genesco, Inc.*, No. Civ S-08-1666 FED-DAD, 2008 U.S. Dist. LEXIS 79882 at *5-8 (E.D. Cal. Sept. 3, 2008); *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 618-19 (N.D. Cal. 2007) ("a claim for unpaid wages under the Labor Code cannot form the basis for a claim of conversion given the existence of the Labor Code's 'detailed remedial scheme for violation of its provisions'"); *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1010 (N.D. Cal. 2007) ("[b]ecause there is a comprehensive, detailed remedial scheme provided in the Labor Code, Plaintiff's cause of action for conversion is improper"); *Lund v. J.C. Penney Outlet*, 911 F. Supp. 442, 445 (D. Nev. 1996).

1  ("Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must

2  be brought under the FLSA.").

3                                    **III.      CONCLUSION**

4          Based on the foregoing, Defendants respectfully request that their Motion for Summary

5  Judgment be granted.

6          DATED this 9th day of November, 2016.

7

8                                          JACKSON LEWIS P.C.

9                                               /s/ Kirsten A. Milton
                                          Elayna J. Youchah, Bar #5837
10                                         Joshua A. Sliker, Bar #12493
                                          3800 Howard Hughes Parkway, Suite 600
11                                         Las Vegas, Nevada 89169

12                                         Kirsten A. Milton (admitted *pro hac vice*)
13                                         150 North Michigan Avenue, Suite 2500
                                          Chicago, IL  60601
14
                                          *Attorneys for Defendants*
15                                         *Fertitta Entertainment, Inc.,*
                                          *Fertitta Entertainment Holdings, LLC,*
16                                         *Fertitta Hospitality, LLC,*
                                          *Landry's Inc., Golden Nugget Inc. dba*
17                                         *Golden Nugget Las Vegas*

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

      I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 9th

3

day of November, 2016, I caused to be served via the Court's CM/ECF Filing, a true and correct

4

copy of the above foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS**

5

**TO PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION** properly addressed to the

6

following:

7

8

Sharon L. Nelson

9

snelson@nelsonlawlv.com
Nelson Law

10

5940 S. Rainbow Blvd.
Las Vegas, Nevada 89118

11

12

*Attorneys for Plaintiff*
*Sallie Shannon Chapman*

13

14

            /s/ Joshua A. Sliker
Employee of Jackson Lewis P.C.

15

4826-2108-7290, v. 6

16

17

18

19

20

21

22

23

24

25

26

27

28